Next case, 5-16-0-4-8-0, In the Interest of K.D.L., a minor, Counsel for Pellant, you may proceed. Committee, please report. Counsel, Assistant Apology Finder, I'm the F of Cody L. There are four issues in the briefs. The State has conceded Issue No. 4 regarding fines and fees and pre-sentencing credit. I will be focusing on Issues 1A and 3, but I can take questions on all four. 17-year-old Cody was adjudicated delinquent based on nothing more than association and insinuation. Early morning on October 18, 2015, a young teen stole a gun from the center console of a pickup truck that was owned by John Perry. This teen takes the gun and shoots it off on two occasions throughout that day. The first occasion, he shoots it at a tree in the woods. The second occasion, unfortunately, he shoots the gun, but it was a fatal shooting of a young woman. This teen is Daniel, and Daniel and Cody are brothers. After the shooting, Daniel and Cody are taken into custody, given their Miranda rights, and placed in separate interviewing rooms. The first room with Daniel is where he tells officers that he stole the gun, he shot the gun, and that he hid the gun. Ultimately, Daniel helps officers go retrieve the gun. In the second interviewing room, there's Cody, who told officers that, I think I touched the gun, and it's a black one, but I gave it back to him. When officers ask, did you know that this gun was a stolen gun, Cody says, no, I did not know. At this time, the state charges Cody in possession of a stolen firearm. And for the state to prove this beyond a reasonable doubt, it had to prove three elements. One, that Cody possessed the stolen firearm. Second, that he was not entitled to possess a firearm. And third, that he knew that this firearm was a stolen firearm. That means before he touched the gun, he had to know that this gun was a stolen gun. Regarding the third element, the state presents no evidence. At the adjudicatory hearing, the state presents three witnesses. One is John Perry, the owner of the gun, who says, yes, my gun was stolen. No, I did not give anyone permission to have the gun or steal the gun. But he also testifies that he does not know Cody. He never saw Cody around his home, and he never saw Cody with his gun. Another witness is Deputy Brandon Murray. Murray testifies solely regarding Daniel's case, that he was investigating a shooting of a young woman, and that Daniel told him where the gun was hidden, so that Murray and Illinois State police officers, they go to the culvert where the gun was hidden, and they retrieve the gun. The last witness was Detective Todd Ebert. Ebert says that he was assisting in the interview of both Cody and Daniel. Ebert is the one that testifies that Daniel said he stole the gun, Daniel said he shot the gun, and Daniel said he hid the gun. He's also the one to testify that Daniel and Cody are brothers, and that in Cody's interview, Cody said, I think I touched the gun, it's a black one, but I gave it back to him. When the officers ask Cody specifically, do you know if Daniel, did you know that Daniel stole this gun from a truck by the lake, Cody says, no, I did not know this was a stolen gun. Based on these three witnesses, the state, and nothing more, the state attempts to argue that Cody had the requisite knowledge that he knew that this was a stolen gun before he touched it. Counsel, can the court look at any reasonable inferences to make a finding, beyond a reasonable doubt, that the minor had the knowledge that it was a stolen gun? No, with the evidence that the state presented, that's not a reasonable inference. The fact that they're just brothers, or that they're minors, it doesn't mean that, you know, all brothers share their deepest, darkest secrets with one another. It's not a reasonable inference to make just because that Daniel all of a sudden had this gun, that Cody had to know that this gun was a stolen gun. What other reasonable inference would you propose? You've got two brothers, juveniles, living in a home where there aren't presumably any guns. Well, Your Honor, the only... I mean, what else would you propose, they think? There are actually three to four very reasonable hypotheses. First, Daniel could have picked up this gun or found the gun. The first time he shoots the gun, it's at a tree in the woods. Someone could have easily had this gun throughout the woods, dropped it, lost it. Daniel could have picked it up. Daniel could have borrowed it or had it loaned from a friend, or a friend might have given it to him. Kids loan out books, comic books, video games to each other all the time. So that's not completely out of the question.  Illegality does not mean that Cody has to know that this gun was stolen. Cody cites two cases, United States v. Howard and United States v. Ayala Garcia, where there are individuals out there who sell guns in parking lots, on the street, on the black market, and Daniel could have easily bought this gun illegally, but does not mean that Cody has to know that this gun was stolen. This association that they're brothers cannot be used to infer guilt. Being brothers and minors, that alone does not mean that Cody had to know this gun was stolen. And the state's arguments insinuating that all brothers, you know, tell each other everything, know each other's schedules every minute of the day, that's not a reasonable inference. That's just not enough. Here the state failed to prove beyond reasonable doubt that Cody had the requisite knowledge. And this court must reverse Cody's adjudication outright. And while the state failed to meet its burden, the juvenile court somehow found a way to find Cody delinquent. That was after it considered Daniel's entire juvenile delinquency case, which is a separate case altogether. The state concedes here that the juvenile court's error would, if not more, ordinarily constitute reversible error. And the state goes into its argument conceding that evidence introduced in Daniel's hearing, which is a completely different hearing, and evidence that was never disclosed to Cody in Cody's case, evidence that was not readily accessible to Cody because juvenile delinquency hearings are closed proceedings and the record is sealed after, and this was all evidence that the court considered after the close of evidence in Cody's adjudicatory hearing, that this violated Cody's right to confrontation and that this was error. Did the adjudicatory hearing for Cody have evidence introduced that the gun was stolen and in Daniel's possession? Yes. So, Deputy Murray and Detective Ebert testifies heavily about Daniel and Daniel, you know, admitting to stealing the gun and shooting the gun. So why is it, I mean, is it really that big of a deal if the court knows, and the court makes reference, obviously, to knowing about Daniel's case? The reality is that information was also presented in Cody's case. Well, if you're confident evidence. I would disagree. Why? So there's a huge confrontation issue here. Everything that the officers testified to, Daniel did not testify in Cody's case. Cody could not confront any of the evidence that was presented in Daniel's case. Plus, Cody does not know exactly what the court considered in Daniel's case. I mean, it is two separate cases, and as the facts show, Daniel kind of did the heavy loading here, right? So he stole the gun. He shot the gun. The evidence presented there would be different than the evidence presented in Cody's case, where Cody just stated to the police officers that he touched the gun, if it's a black one, and he gave it back. The state, relying on one sentence of the juvenile court's order for the motion to reconsider, says that the court made it clear that Cody's case, that Cody's delinquency finding would not change absent the court's consideration of Daniel's delinquency case. The court says, in fact, if the court did consider some evidence from a companion case, meaning Daniel's case, it would have been harmless here, as this court found there was substantial circumstantial evidence regarding the evidence in the companion case, so Daniel's case. The state's wrong that this one minor can undo, can cure everything that the juvenile court did in this case. Here, the juvenile court repeatedly stated that this was a very circumstantial case. I think at one point the court says, this is one of the most circumstantial cases that it's ever heard. And after finding that Cody's case was circumstantial, the court sui sponte decides that it's taking judicial notice of Daniel's case, and that only after taking into consideration all the evidence in Cody's case and Daniel's case that it was able to find Cody guilty beyond a reasonable doubt. The court says here that in this case, in Cody's case, it actually had the advantage of knowing everything about Daniel's case, about hearing evidence from Daniel's case, that basically the court had the advantage in this case of knowing all those facts, and that that allowed the court to find Cody guilty. But even until the end, in that order, the court said, thank you. Thank you, counsel. We'll have an opportunity for rebuttal. Counsel for the state. Good afternoon, your honors. May it please the court, counsel. My name is Patrick Daly. I'm here on behalf of the state. Your honors, given the very limited time in which we are able to present arguments in this court, I'm going to take a somewhat different approach than counsel did. I would like to actually talk about Issue 1B, my preparation of the case. This is a particularly concerning issue for me. It also presents, I think, a very important legal issue. So, you know, with regards to whether there's proof of, you know, circumstantial evidence that the juvenile was wearing the gun was stolen, that this is evidence from the record, you know, if I put an eye kind of too sensitive and so is counsel, that is what it is, I suppose. The legal issue is one I really would like to bring up for discussion, because as I prepared for this argument, it kind of became a little bit more troubling to me, and I'll explain why. The statute reads as follows. A person commits the possession of a stolen firearm when he or she, not being entitled to the possession of a firearm, possesses the firearm, knowing it to have been stolen or converted. And in looking at the defendant's argument, and I had taken the approach sort of head-on that, you know, the argument is sustained and not disproven that, you know, the minor or minors did not have an FOIA card or some legal, you know, right to possess, if you will, from a legal standpoint. And I had kind of countered that with a citation to the aggravated UUW statute with regards to the prohibition against people under the age of 21 possessing a weapon except under limited circumstances, okay? But when I look at the statute, there is something not very clear about it, and so that's why I presented it before this Court, because if for some reason this Court accepts my argument on other issues with regards to sufficiency of the evidence, this will have to be taken under consideration. When the statute is written in terms of entitled to possess a firearm, it's a bit of an anomalous kind of configuration of language, because what it sort of suggests, and I think it's sort of worn out by the juvenile's argument, is that it's an exonerated element of the offense, if you will, from a legal, perhaps right in the sense of a firearm legal possession to, you know, if you have an FOIA card and you're, you know, out in the woods or something like that. It doesn't really make any logical sense to me, okay? And my interpretation of it was kind of more along the lines of giving a logical explanation, is that the possession, entitlement to possession, is more possessory versus someone with a greater interest than the defendant him or herself, okay? I've lost you, Mr. Daly. Okay, I was afraid that would happen. Now let me explain. Are you on the entitlement portion or are you on the possession? I'm on the entitlement portion. That's what I'm going to focus on here today. Okay, well, before you do that, if I could, since you have such limited time, I have one question. Yeah, ask away. Do you think that possession can be based on somebody who touches and holds a gun? I mean, do you think that a crime can be based? Is that really possession? Is that what the statute was meant to mean, is if I touch a gun or hold it for a few minutes, is that really the intent of possession in your view? Yes and no. In a certain legal sense, and that's sort of the game that we deal with here, the answer is yes. Possession is a possession, whether you possess for a moment or you possess for days. It kind of comes down to, actually, it's more of a matter of prosecutorial discretion. Is it really right to charge someone who possesses a weapon only for a brief amount of time and then hands it over? I was a long-time prosecutor before coming here, and I wouldn't have done that. You wouldn't? I would not have, no. And then I'd have to pat myself on the back. It's just the same that when we talk about sort of the distinction between is this what the statute is entitled or designed to prevent or to preclude? Maybe not, but the statute is written as it's written, and possession is possession. It's not defined. It's not defined. A dictionary definition would be essentially to have something in your grasp or your control. But then if you go into where you're heading, which is entitlement to possession, how do you define it then? Well, I'm not really focusing on any sort of distinction between superpossession and minimum possession. I think I'll be probably trying to split hairs in a way. I mean, our position, of course, at the state is that the possession of a weapon is proven by inferential or circumstantial or inferential evidence that the juvenile had indicated that he had handed the weapon back to Daniel. My entitlement really belongs more in the category of does entitlement mean entitlement to possess a weapon, be it minimal or maximum, versus in light of someone's interest in the weapon? In other words, is there any evidence that would suggest that the owner of the weapon had granted any sort of permission to this particular juvenile to possess this weapon? Rather than is it an exonerated circumstance to possession of a stolen item, your weapon, that you had sort of independent of all that, a natural ID card, and you could otherwise possess a weapon in any other circumstance? And that really doesn't make any sense if you're going to criminalize the possession of a stolen weapon. I mean, there's no such sort of exonerating circumstance in possession of a stolen item, you know, a stolen goods prosecution. And that's really kind of where I got a little concerned about this. And I'm sorry if I'm going to still confuse you on this, and if I may not get through it. But I think that when, if we're going to consider this in terms of, well, let me stop right there. If you look at the next statute, which is aggravated possession of a stolen firearm, it's written in terms of not being entitled to possession of not less than two, not more than five, not less than six, and more than ten, et cetera, et cetera. So the aggravated circumstances for aggravated possession are based upon the number of weapons that are being possessed. So because there's no legal distinction between one or 100 weapons with regards to a legal entitlement to possess a weapon, either legally entitled to possess it or not, you know, there's sort of a suggestion here that the possession relates to your interest in the weapon versus someone else's, rather than a generalized legal right to possess a weapon, broadly speaking. Okay. Unfortunately, the legislation doesn't make it so easy for us because, you see, entitled to possession of a firearm, and I can't dispute that sort of grammatical confusion with the statute, which is why I think opposing counsel and I have taken this on as, well, maybe you had an FOID code. When I say, well, it was attacked by the UUW, et cetera, et cetera. Was there any other testimony than this? Sure. I think I touched it. If it's the black one, and I gave it back to him. Anything else that would prove possession other than those three statements? That's it. That's it. That's it. I think I touched it. If it's the black one, I gave it back to him. That's it. That's the whole basis for possession. It's not overlong. Okay. I just wanted to make sure I didn't miss anything. No, you're not. You're not. And, again, I can see and appreciate the Court's kind of concern about criminalizing de minimis conduct, but, you know, if it were to be ‑‑ I'm sorry. I didn't hear you. I was just going to say, it's not just de minimis conduct, but it's the statement of an officer that's completely uncorroborated. There was no taping of the interview. There was no advocate there, juvenile advocate. This is just one person repeating three short phrases. Well, respectfully, do we know of those circumstances? I don't know. I mean, maybe. Precisely. Well, granting that that's true, okay, I mean, I think you could if you wanted to. There was no disputation that he made the statement. I mean, there wasn't a motion to suppress. There wasn't even a challenge that he never told the officer, you know, that I never told the officer I handed the weapon back to my brother. So, I mean, given those circumstances, even though, you know, obviously everyone would like it if we thought about the willful corroboration that always makes this case much stronger, you know, when you have a piece of evidence and it's not really hotly disputed, then it becomes sort of part of the greater picture of evidence for the Court to consider. So the Court's concerns are certainly legitimate, but I don't think they're necessarily overriding this set of circumstances in this case as far as elements of proof of possession. When we talk about corroboration, I know I'm kind of veering off again where I started, and it is funny. You know, it also kind of brings up the corpus delicti argument that the juvenile raises. I do think that the corpus delicti was proven in as much that the requirement of any corpus delicti is, you know, from the common law roots of it that you don't convict someone simply on the basis of their confession. But here we have, obviously, an abundance of circumstances which establishes the weapon's stolen character, that the juvenile's brother stole it, that they had an interaction, that it was, you know, that they were together when the gun was being fired. The juvenile provided a physical description of the gun, which is, you know, superficially consistent with the weapon that was stolen. So I think, given the size of the fighting suspicious lessons, in light of the fact that the state need only prove a slight amount of evidence in order to establish the corpus delicti requirement, I believe that's true. So I hope I answered at least some of your questions. Thank you. Thank you very much. Thank you. Rebuttal? I would just like to make two quick points regarding counsel's 1B argument about possession or about entitlement. I don't believe either party's actually delved into the actual argument that counsel brought up today about that entitlement. We focused mostly on the FOI card and the age element, so I don't think we really addressed it in the briefs, and I don't think it was actually raised here. The second point that I want to make is, in the reply brief for Cody, we talk regarding your Honor's corpus delicti questions. We cite to Hannah, or it will be Hannah, it will be Pitts, and it will be Smith, to show what courts look at to consider corroborating evidence. So in this case, the State cites to, over and over again, that the gun wasn't black. But Detective Ebert testifies at trial that blacks are his service weapon, that they're service weapons for officers in Athenium County, and all the blacks that he's seen, at least most of them, are black. So I don't think the actual color really corroborates anything. And if you look at Pitts, Smith, and Hannah, there has to be a little bit more, just anything more than what was shown in this case. All right. Thank you. Thank you, counsel. The court will take the matter under advisement and issue a disposition in due course.